## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| LISA ZAYAS, CATALINA OCAMPO, and DEBORAH JEAN, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. _____ |
| v. | **CLASS ACTION COMPLAINT** |
| ENERGIZER HOLDINGS, INC., EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE BRANDS, LLC, EDGEWELL PERSONAL CARE, LLC, PLAYTEX PRODUCTS, INC., SUN PHARMACEUTICALS, LLC; | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Lisa Zayas, Catalina Ocampo, and Deborah Jean (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, respectfully offer the following for their Complaint against Energizer Holdings, Inc., Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, Edgewell Personal Care, LLC, Playtex Products, Inc., and Sun Pharmaceuticals, LLC (collectively, "Defendants"):

1.      Defendants distribute, market, and sell several over-the-counter sunscreen products under their brand name "Banana Boat."

2.      Defendants' Banana Boat sunscreen products were advertised to consumers and represented as safe and effective and not adulterated with benzene, a known human carcinogen.

3.      But Defendants' Banana Boat sunscreen products were not safe: several of Defendants' Banana Boat sunscreen products have been independently tested and shown to be

adulterated with benzene, a known human carcinogen. The presence of benzene in Defendants' Banana Boat sunscreen products was not disclosed in the products' label, in violation of state and federal law. Despite this, their makers continued to tout their safety and conceal their risks.

4.      Because Plaintiffs purchased worthless products, they have suffered an economic loss so the makers of Banana Boat sunscreen products could reap ill-gotten profits.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1332(d) as this case alleges a class action claim in which the matter in controversy exceeds $5,000,000 and most of the class members are citizens of a state different from the citizenship of the Defendants.

6.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Eastern District of this Court and Defendants are subject to personal jurisdiction in the Eastern District of this Court. Pursuant to L.R. 3.2, divisional venue is proper in the Eastern Division of this Court because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in that Division, and Defendants, Edgewell and Energizer, are headquartered in this District.

## PARTIES

7.      Plaintiff Lisa Zayas is a resident and citizen of Philadelphia, Pennsylvania. Most recently in 2021 and several years prior to , Plaintiff Zayas purchased Banana Boat brand sunscreen products, from either CVS, Marshall's, Walgreens, and/or Walmart for herself and members of her family. During this time, Plaintiff Zayas was unaware that Defendants' sunscreen products may be adulterated with benzene. Plaintiff Zayas purchased Defendants' sunscreen products on the assumption that the labeling of these products was accurate and that the products were unadulterated, safe, and effective. Upon learning of the serious safety risks posed by Defendants'

sunscreen products, she has stopped using them. Plaintiff Zayas would not have purchased Defendants' sunscreen products had she known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff Zayas suffered injury in fact when she spent money to purchase sunscreen products she would not otherwise have purchased absent Defendants' misconduct, as alleged herein.

8.      Plaintiff Catalina Ocampo is a resident and citizen of Chicago, Illinois. Approximately May 2021, Plaintiff Ocampo purchased Banana Boat brand sunscreen products, from CVS for herself. During this time, Plaintiff Ocampo was unaware that Defendants' sunscreen products may be adulterated with benzene. Plaintiff Ocampo purchased Defendants' sunscreen products on the assumption that the labeling of these products was accurate and that the products were unadulterated, safe, and effective. Upon learning of the serious safety risks posed by Defendants' sunscreen products, she has stopped using them. Plaintiff Ocampo would not have purchased Defendants' sunscreen products had she known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff Ocampo suffered injury in fact when she spent money to purchase sunscreen products she would not otherwise have purchased absent Defendants' misconduct, as alleged herein.

9.      Plaintiff Deborah Jean is a resident and citizen of Salem, Oregon. Approximately 2019 and multiple times throughout that year, Plaintiff Jean purchased Banana Boat brand sunscreen products, from Walgreens for herself and her daughter. During this time, Plaintiff Ocampo was unaware that Defendants' sunscreen products may be adulterated with benzene. Plaintiff Ocampo purchased Defendants' sunscreen products on the assumption that the labeling of these products was accurate and that the products were unadulterated, safe, and effective. Upon learning of the serious safety risks posed by Defendants' sunscreen products, she has stopped using

them. Plaintiff Ocampo would not have purchased Defendants' sunscreen products had she known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff Ocampo suffered injury in fact when she spent money to purchase sunscreen products she would not otherwise have purchased absent Defendants' misconduct, as alleged herein.

10.     Defendant Energizer Holdings, Inc. ("Energizer") is a Missouri corporation, having a principal place of business at 533 Maryville University Drive, St. Louis, Missouri 63141. Energizer manufactures, distributes, markets and/or sells sun care products under the Banana Boat brand to consumers nationwide. Energizer may be served via its registered agent at: C T Corporation System, at 120 S. Central Ave., Clayton, MO 63015.

11.     Defendant Edgewell Personal Care Company is a foreign business corporation with its principal place of business in Chesterfield, Missouri. Edgewell Personal Care Company is licensed to and does business throughout the United States. Edgewell Personal Care Company manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide. Edgewell Personal Care Company may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

12.     Defendant Edgewell Personal Care Brands, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Edgewell Personal Care Brands, LLC is a wholly-owned subsidiary of Edgewell Personal Care Company. Edgewell Personal Care Brands, LLC manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide. Edgewell Personal Care Brands, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

13.     Edgewell Personal Care, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Edgewell Personal Care, LLC is a wholly-owned subsidiary of Edgewell Personal Care Company. Edgewell Personal Care, LLC manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide. Edgewell Personal Care, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

14.     At all relevant times, each and every "Edgewell" Defendant was acting as an agent and/or employee of each of the other "Edgewell" Defendants with respect to the manufacturing, marketing, selling and/or distributing of Banana Boat sunscreen products, and was the owner, agent, servant, joint-venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other "Edgewell" Defendants. On information and belief, each of the acts and/or omissions complained of herein were made known to, and ratified by, each of the other "Edgewell" Defendants. All three "Edgewell" Defendants will be referred to collectively, hereinafter, as "Edgewell."

15.     Upon information and belief, the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Products and the claims alleged herein was primarily carried out at Energizer's and/or Edgewell's headquarters and facilities within Missouri, as is most, or all, of the Products' manufacturing and assembly.

16.     Defendant Playtex Products, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Playtex Products, LLC is a wholly-owned subsidiary of Edgewell Personal Care Company. Playtex

5

Products, LLC manufactures, distributes, markets and/or sells Banana Boat sunscreen products as one of its brands to consumers nationwide. Playtex Products, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 3411 Silverside Road, Tatnall Building, Ste., 104, Wilmington, DE 19810.

17.     Defendant Sun Pharmaceuticals, LLC ("Sun Pharmaceuticals") is a limited liability company organized under the laws of Delaware with its principal place of business in Shelton, Connecticut. Sun Pharmaceuticals is a wholly-owned subsidiary of Edgewell Personal Care Company. Sun Pharmaceuticals manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide. Sun Pharmaceuticals may be served via its registered agent at: Corporate Creations Network, Inc., 3411 Silverside Road, Tatnall Building, Ste., 104, Wilmington, DE 19810.

## FACTUAL ALLEGATIONS

18.     Defendants manufacture, market, advertise, label, distribute, and/or sell a variety of Banana Boat sunscreen spray/aerosol products and lotions, including:

| 1 | Banana Boat | Spray | Deep Tanning Dry Oil Clear Sunscreen Spray SPF 4 |
|---|---|---|---|
| 2 | Banana Boat | Spray | Kids Max Protect & Play Sunscreen C-Spray SPF 100 |
| 3 | Banana Boat | Lotion | Kids Mineral Based Sunscreen Lotion SPF 50+ |
| 4 | Banana Boat | Spray | Kids Sport Sunscreen Lotion Spray SPF 50 |
| 5 | Banana Boat | Spray | Protective Dry Oil Clear Sunscreen Spray with Coconut Oil FPS 15 |
| 6 | Banana Boat | Spray | Simply Protect Kids Sunscreen Spray SPF 50+ |
| 7 | Banana Boat | Spray | Simply Protect Sensitive Mineral Enriched Sunscreen Lotion Spray SPF 50 |
| 8 | Banana Boat | Spray | Ultra Defense Ultra Mist Clear Sunscreen Spray SPF 100 |
| 9 | Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 100 |
| 10 | Banana Boat | Lotion | Ultra Sport Sunscreen Lotion SPF 100 |
| 11 | Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 30 |
| 12 | Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 50 (hereafter collectively referred to as "Sunscreen Products").[1] |

---

[1] Discovery may reveal additional Sunscreen Products manufactured, sold, and distributed by

19.     In 2020, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy, ran tests on a variety of Defendants' Sunscreen Products. Specifically, Valisure tested numerous lots of Defendants' spray and lotion Sunscreen Products. Through its testing, Valisure discovered that certain of the Sunscreen Products contain benzene, with values ranging from less than 0.1 parts per million ("ppm"), 0.10 ppm to 2 ppm, and more than 2 ppm. For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route.[2] Benzene is not listed as an active or inactive ingredient on any of the labels of Defendants' Sunscreen Products. Moreover, all of the Sunscreen Products are marketed and advertised in an identical manner — as "Sunscreen."

20.     On May 25, 2021, Valisure filed a citizen petition with the Food and Drug Aministration ("FDA") asking the agency to recall all batches of Defendants' Sunscreen Products that (as tested) contained 0.1 ppm or more of benzene on the basis that they are adulterated under Section 501 of the Federal Drug and Cosmetics Act ("FDCA") and misbranded under Section 502 of the FDCA, in violation of 21 U.S.C. § 351 and 21 U.S.C. § 352, respectively. As of this filing, the FDA has not responded to Valisure's citizen petition and Defendants have not taken any action to remove the Sunscreen Products from the market.

21.     Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene

---

Defendants that are affected by this action and Plaintiffs reserve their right to include any such products in this action.

[2] Centers for Disease Control and Prevention. *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).

have been recognized for over one hundred years. According to the National Toxicology Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[3] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[4] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence. … The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[5]

22.     Likewise, the FDA recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[6] and classifies benzene as a "Class 1" solvent that should be "avoided."[7] FDA's Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[8]

23.     The FDA regulates sunscreens to ensure they meet safety and effectiveness

---

[3] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis in original).

[4] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017: Lyon, France), at p. 33.

[5] *Id*. at 34.

[6] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1.

[7] https://www.fda.gov/media/71737/download.

[8] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at https://www.fda.gov/media/71736/download.

standards.[9] The FDA also regulates sunscreens, including the Sunscreen Products at issue here, as

over-the-counter ("OTC") drugs rather than as cosmetics. As an FDA-regulated product,

sunscreens must pass certain tests before they are sold. As noted on FDA's website,

> Every drug has active ingredients and inactive ingredients. In the case
> of sunscreen, active ingredients are the ones that are protecting your
> skin from the sun's harmful UV rays. Inactive ingredients are all
> other ingredients that are not active ingredients, such as water or oil
> that may be used in formulating sunscreens.[10]

24.     Per the FDA regulations governing Defendants' Sunscreen Products, titled

"Sunscreen Drug Products for Over-the-Counter Human Use,"[11] there are certain acceptable active

ingredients in products that are labeled as sunscreen.[12] Benzene, a known human carcinogen, is

not on the FDA's list of acceptable active or inactive ingredients for any sunscreen products,

regardless of manufacturer. Nor is benzene identified as an active or inactive ingredient on the

labels of any of the Defendants' Sunscreen Products. Thus, Defendants' assurances in their

marketing of their Sunscreen Products - e.g., that "[t]his product is safe for its intended use based

on the formulation, testing results, and the long history of safe consumer use" – are false and

misleading.[13]

25.     The governing regulations provide: "An over-the-counter sunscreen drug product

in a form suitable for topical administration is generally recognized as safe and effective and is not

misbranded if it meets each condition in this part and each general condition established in 330.1

---

[9] *See generally* 21 CFR §§352.1– 352.77.

[10] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.

[11] 21 CFR §352.10.

[12] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.

[13] https://edgewell.com/wp-content/uploads/2016/08/92014320-BB-Dry-Oil-Spray-SPF-4.pdf.

of this chapter."[14] Defendants failed to meet this standard as described herein.

26.     Because Defendants did not disclose benzene, a known human carcinogen, may be present in the Sunscreen Products purchased by Plaintiffs and the putative Class members, the Sunscreen Products are adulterated and misbranded. As noted by the World Health Organization, there is no "no safe level of benzene" exposure, so it is unsuitable for human application as an ingredient in sunscreen.[15]

27.     Defendants wrongfully advertised and sold the Sunscreen Products without any labeling to indicate to consumers that these products may contain benzene. The following image shows an example:

---

[14] 21 CFR §352.1.
[15] https://www.who.int/ipcs/features/benzene.pdf.



**Active Ingredients**
Avobenzone 3.0%, Homosalate 10.0%, Octisalate 5.0%,
Octocrylene 10.0%,  Oxybenzone 6.0%

**Inactive ingredients:**   Alcohol  Denat.,  Isobutane, VA/Butyl
Maleate/Isobornyl Acrylate Copolymer, Caprylyl Glycol, Cyclopentasiloxane,
Cyclohexasiloxane,  Fragrance,  Polyglyceryl-3  Stearate/Isostearate/Dimer
Dilinoleate  Crosspolymer,  Lauryl  PEG-8  Dimethicone,  Phenylisopropyl
Dimethicone,  Ascorbyl  Palmitate,  Methyl  Dihydroabietate, Tocopheryl
Acetate, Mineral Oil, Panthenol, Water, Aloe Barbadensis Leaf Extract.

28.     Plaintiffs have standing to represent members of the putative Classes because there

is sufficient similarity between the specific products purchased by the Plaintiffs and the other

Sunscreen Products not purchased by the Plaintiffs. Specifically, each and every one of the

Sunscreen Products (i) are marketed in substantially the same way – as "Sunscreen"— and (ii) fail

to include labeling indicating to consumers that the Sunscreen Products may contain benzene as

an active or inactive ingredient. Accordingly, the misleading effect of all of the Sunscreen

Products' labels are substantially the same.

29.     Defendants' failure to control for benzene contamination and continued sale of its

adulterated products constitutes actionable fraud.

30.     Plaintiffs and the Class were injured by the full purchase price of the Products because the Products are worthless, as they are adulterated and contain harmful levels of benzene, and Defendants have failed to warn consumers of this fact. Such illegally sold products are worthless and have no value. *See Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019); *see also In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.,* 2021 WL 222776, at \*16 (D.N.J. Jan. 22, 2021) ("This Court finds that contaminated drugs are economically worthless at the point of sale by virtue of the dangerousness caused by their contamination, regardless whether the sold VCDs actually achieved the medical purpose of lowering blood pressure. Put differently, contaminated drugs, even if medically efficacious for their purpose, cannot create a benefit of the bargain because the contaminants, and their dangerous effects, were never bargained for."). Plaintiffs and Class members bargained for a sunscreen product free of contaminants and dangerous substances, and were deprived the basis of their bargain when Defendants sold them a sunscreen product containing the dangerous substance benzene, which rendered the Products unmerchantable and unfit for use.

31.     As the Products expose consumers to benzene well above the legal limit, the Products are not fit for use by humans. Plaintiffs are further entitled to damages for the injury sustained in being exposed to high levels of acutely-toxic benzene, damages related to Defendants' conduct, and injunctive relief.

32.     Plaintiffs seek to recover damages because the Products are adulterated, defective, worthless, and unfit for human use due to the presence of benzene, a carcinogenic and toxic chemical impurity.

33.     Plaintiffs and the putative Class suffered economic damages due to Defendants' misconduct (as set forth below) and they seek injunctive relief and restitution for the full purchase

price of the sunscreen product(s) they purchased. Plaintiffs allege the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiffs further believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

34.     Plaintiffs bring this action on behalf of themselves and the Classes for equitable relief and to recover damages and restitution for: violation of the consumer protection statutes invoked herein; fraudulent concealment; and unjust enrichment.

### *Defendants' Marketing and Sale of the Products Violates Federal Law*

35.     Section 5(a) of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

36.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

37.     Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, the Products are either "foods" or "drugs" as defined in Section 15(b) and (c) of the FTC Act, 15 U.S.C. §§ 55(b), (c). Under these provisions, companies must have a reasonable basis for making objective product claims.

38.     As alleged herein, Defendants have represented that the ingredients in its sunscreen Products are safe and affective and are not adulterated with benzene. However, these representations are false, deceptive, and misleading as the Products actually contain dangerous levels of benzene. The making of such misrepresentations by Defendants constitutes a deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the

13

FTC Act, 15 U.S.C. §§ 45(a), 52.

## CLASS ACTION ALLEGATIONS

39.     Plaintiffs bring this case as a class action pursuant to Federal Rule of Civil Procedure 23 on their own behalf and as the Class representatives on behalf of the following:

**Nationwide Class:** All persons within the United States who purchased the Products within the applicable statute of limitations.

**Pennsylvania Sub-Class:** All persons within the Commonwealth of Pennsylvania who purchased the Products within the applicable statute of limitations.

**Illinois Sub-Class:** All persons within the State of Illinois who purchased the Products within the applicable statute of limitations.

**Oregon Sub-Class:** All persons within the State of Oregon who purchased the Products within the applicable statute of limitations.

40.     The Nationwide Class, Pennsylvania Sub-Class, Florida Sub-Class, Illinios Sub-Class, and Oregon Sub-Class shall collectively be referred to herein as the "Classes."

41.     Plainitffs reserve the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

42.     Excluded from the Classes are governmental entities, Defendants, and Defendants' officers, directors, affiliates, legal representatives, and employees.

43.     This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

44.     **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). This Class numbers in at least the thousands of persons. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a

variety of means, including but not limited to, direct mail, email, published notice, and website posting.

45.     **Existence and Predominance of Common Questions of Law and Fact** – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that, under Missouri law, predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

      a.   whether Defendants' advertising, merchandising, and promotional materials directed to Plaintiffs were deceptive regarding the risks posed by Defendants;

      b.   what Defendants made representations regarding the safety of their products;

      c.   whether Defendants omitted material information regarding the safety of their products;

      d.   whether Defendants' Banana Boat Sunscreen Products were merchantable;

      e.   whether Defendants' violated the consumer protection statutes invoked herein;

      f.   whether Defendants' conduct alleged herein was fraudulent; and

      g.   whether Defendants were unjustly enriched by sales of their Banana Boat Sunscreen Products.

46.     The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendants' Banana Boat Sunscreen Products throughout the United States, including Missouri, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of Plaintiffs' claims.

47.     **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of those of the Class in that the Class members uniformly purchased Defendants' Banana Boat Sunscreen Products and were subjected to Defendants' uniform merchandising materials and

representations at the time of purchase.

48.     **Superiority.** A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Class who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

49.     **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Classes because they are members of the Class and their interests do not conflict with the interests of the Classes that they seek to represent. The interests of the members of the Class will be fairly and adequately protected by Plaintiffs and their undersigned counsel. Counsel are experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

50.     **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible

16

standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

51.     **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiffs seek to certify a Class to enjoin Defendant from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised benefits and are otherwise safe to use as intended.

52.     Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

   a.   The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendants;

   b.   The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

   c.   Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

## COUNT I

**Violation of the Missouri Merchandising Practices Act**
**(On Behalf of the Nationwide Class)**

53.     Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though

set forth fully herein.

54.     The Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*, prohibits "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020(1).

55.     Defendants' Banana Boat Sunscreen Products were merchandise within the meaning of Mo. Rev. Stat. § 407.010(4).

56.     Defendants and Plaintiffs are persons within the meaning of Mo. Rev. Stat. § 407.010(5).

57.     Defendants were engaged in trade or commerce within the meaning of Mo. Rev. Stat. § 407.010(7).

58.     Plaintiffs purchased Defendants' Banana Boat Sunscreen Products primarily for personal, family or household purposes within the meaning of Mo. Rev. Stat. § 407.025.1(1).

59.     In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Missouri Merchandising Practices Act by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts on the labels and packaging of their Banana Boat Sunscreen Products, including ommitting the material fact from the Products' labels that the Products contain high levels of benzene.

60.     In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Missouri Merchandising Practices Act by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts in the marketing, advertising, and promotions for their Banana Boat Sunscreen Products, including ommitting the

material fact from the Products' labels that the Products contain high levels of benzene.:

61.     By knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding their Banana Boat Sunscreen Products, as detailed above, Defendants engaged in one or more unfair or deceptive business practices prohibited by the Missouri Merchandising Practices Act.

62.     Defendants' misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of their Banana Boat Sunscreen Products were disseminated to Plaintiffs in a uniform manner.

63.     Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to, and in fact, did deceive reasonable consumers, including Plaintiffs, about the inherently defective and unreasonably dangerous nature of their Banana Boat Sunscreen Products.

64.     The facts regarding their Banana Boat Sunscreen Products that Defendants knowingly and intentionally misrepresented, concealed, omitted, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs, who considered such facts to be important to their purchase decisions with respect to Defendants' Banana Boat Sunscreen Products.

65.     Plaintiffs were aggrieved by Defendants' violations of the Missouri Merchandising Practices Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' knowing and intentional misrepresentations, concealments, omissions, and failures to disclose material facts regarding their Banana Boat Sunscreen Products.

66.     Plaintiffs were deceived by Defendants' misrepresentations, concealments,

omissions, and failures to disclose material facts regarding their Banana Boat Sunscreen Products. Had Defendants not engaged in the deceptive acts and practices alleged herein, Plaintiffs would not have purchased Defendants' Banana Boat Sunscreen Products, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

<u>**COUNT II**</u>

**Violation of The Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**(On behalf of the Pennsylvania Sub-Class)**

67.     Plaintiff Zayas incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

68.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") 73 Pa. Cons. Stat. §§ 201-1, *et seq*., prohibits the use of unfair or deceptive acts or practices in the conduct of trade or commerce. The Pennsylvania CPL is to be liberally construed to effectuate its purpose.

69.     Plaintiff Zayas and other members of the Pennsylvania Sub-Class, as purchasers of the Products, are consumers within the meaning of the Pennsylvania CPL given that Defendants' business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

70.     Defendants' conduct in misrepresenting the benefits of their Products and/or omitting material information from the Products' labels constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendants' trade or commerce.

71.     Defendants' also knowingly concealed, suppressed, and consciously omitted material facts to Plaintiffs and other members of the Pennsylvania Sub-Class knowing that consumers would rely on the advertisements and packaging and Defendants' uniform

representations to purchase the Products.

72.     Once the defect in the Products and its tendency to cause cancer in humans became apparent to Defendants, consumers (Plaintiff Zayas and other members of the putative Pennsylvania Sub-Class) were entitled to disclosure of that fact because a significant risk of Defendants' Banana Boat Sunscreen Products potentially being adulterated with and containing harmful levels of benzene, a human carcinogen, would be a material fact in a consumer's decision-making process, and, without Defendants' disclosure consumers would not necessarily know that there is such a risk.

73.     Defendants intended that Plaintiff Zayas, and the Pennsylvania Sub-Class would rely on the continued deception by purchasing the Products, unaware of the material facts and omissions described above. Defendants knew that its customers would continue to rely on its representations that the ingredients in its sunscreen Products were safe and effective and were not adulterated with benzene, and knew that consumers would continue to rely upon its silence as to any known risk of the presence of a carcinogenic and toxic chemical impurity, as evidence that the Products were safe. This conduct constitutes consumer fraud within the meaning of the Pennsylvania CPL.

74.     Defendants' material non-disclosure set forth above constitutes an unconscionable commercial practice, deception, fraud, false promise, misrepresentation and/or omission of material facts as to the nature of the goods, in violation of the Pennsylvania CPL.

75.     Plaintiff Zayas and the other members of the Pennsylvania Sub-Class suffered damages as a proximate result of the unfair acts or practices of Defendants alleged herein. Defendants' misrepresentations and/or omissions of material fact were done knowingly, intentionally, willfully or with reckless disregard for the consequences of its actions.

21

76.     Plaintiff Zayas and other members of the Pennsylvania Class would not have purchased the Products but for the promised benefits and concealment of any risk of harm because  the Products as sold had no intrinsic value to them.

77.     Defendants knowingly accepted the benefits of their deception and improper conduct in the form of profits from the increased sale of the Products.

78.     As a proximate result of the above-described violations of the Pennsylvania CPL, Plaintiff Zayas and other members of the Pennsylvania Sub-Class: (a) purchased and used the Products when they would not otherwise have done so; (b) suffered economic losses consisting of the cost of purchasing the Products; and (c) suffered and/or will suffer additional economic losses by purchasing the Products.

79.     Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

80.     Plaintiff Zayas also seeks to enjoin Defendants' ongoing deceptive practices relating to their claims on the Products' labels and advertising.

## COUNT III

### Violation Of The Illinois Consumer Fraud Act
### (On behalf of the Illinois Sub-Class)

81.     Plaintiff Ocampo incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

82.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq*., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

83.     Plaintiff Ocampo  and other members of the Illinois Sub-Class, as purchasers of the Products, are consumers within the meaning of the ICFA given that Defendants' business activities

involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

84.     Defendants' conduct in misrepresenting the benefits of its Products constitute the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendants' trade or commerce.

85.     Defendants also knowingly concealed, suppressed, and consciously omitted material facts to Plaintiff Ocampo and other members of the Illinois Sub-Class knowing that consumers would rely on the advertisements, packaging, and Defendant's uniform representations to purchase the Products.

86.     Once the defect in the Products and its tendency to cause cancer in humans became apparent to Defendants, consumers (Plaintiff Ocampo and other members of the putative Illinois Sub-Class) were entitled to disclosure of that fact because a significant risk of Defendants' sunscreen Products potentially being adulterated with and containing harmful levels of benzene, a human carcinogen, would be a material fact in a consumer's decision-making process, and, without Defendants' disclosure consumers would not necessarily know that there is such a risk.

87.     Defendants intended that Plaintiff Ocampo, and the Illinois Sub-Class would rely on the continued deception by purchasing the Products, unaware of the material facts and omissions described above. Defendants knew that its customers would continue to rely on its representations that the ingredients in its sunscreen Products were safe and effective and were not adulterated with benzene, and knew that consumers would continue to rely upon its silence as to any known risk of the presence of a carcinogenic and toxic chemical impurity, as evidence that the Products were safe. This conduct constitutes consumer fraud within the meaning of the ICFA.

88.     Defendants' material non-disclosure set forth above constitutes an unconscionable

commercial practice, deception, fraud, false promise, misrepresentation and/or omission of material facts as to the nature of the goods, in violation of the ICFA.

89.     Plaintiff Ocampo and the other members of the Illinois Sub-Class suffered damages as a proximate result of the unfair acts or practices of Defendants alleged herein. Defendants' misrepresentations and/or omissions of material fact were done knowingly, intentionally, willfully or with reckless disregard for the consequences of its actions.

90.     Plaintiff Ocampo and other members of the Illinois Sub-Class would not have purchased the Products but for the promised benefits and concealment of any risk of harm because the Products as sold had no intrinsic value to them.

91.     Defendants knowingly accepted the benefits of its deception and improper conduct in the form of profits from the increased sale of the Products.

92.     As a proximate result of the above-described violations of the ICFA, Plaintiff Ocampo and other members of the Class: (a) purchased and used the Products when they would not otherwise have done so; (b) suffered economic losses consisting of the cost of purchasing the Products; and (c) suffered and/or will suffer additional economic losses in repairing and restoring the damage caused by the Products.

93.     Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

94.     Plaintiff Ocampo also seeks to enjoin Defendants' ongoing deceptive practices relating to its claims on the Products' labels and advertising.

<u>**COUNT IV**</u>

**Violations of the Oregon Unlawful Trade Practices Act**
**Or. Rev. Stat. § 646.607, *et seq*. ("OUTPA")**
**(On behalf of the Oregon Sub-Class)**

95.     Plaintiff Jean incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

96.     Defendants are engaged in a "trade" and "commerce" within the meaning of OR. REV. STAT. § 646.605(8).

97.     Defendants are a "person" within the meaning of OR. REV. STAT. §§ 646.605(4), 646.607, and 646.608.

98.     Plaintiff Jean and each and every Oregon Sub-Class members' purchase of Defendants' Banana Boat Sunscreen Products constitutes a "sale" within the meaning of OR. REV. STAT. § 646.607.

99.     Defendants have advertised within the meaning of OR. REV. STAT. § 646.608.

100.     The acts and practices of Defendants as described herein were intended to result in the sale of their Banana Boat Sunscreen Products to Plaintiff Jean and Oregon Sub-Class members.

101.     Defendants  have engaged in unconscionable  tactics, false advertising,  deceptive practices, unlawful methods of competition, and/or unfair acts  as defined in the OUTPA, including the material omission that  the  Products contain benezeto  the  detriment  of  Plaintiff Jean  and Oregon Sub-Class  members. Defendants' unconscionable tactics and deceptive practices have been  intentionally,  knowingly,  and unlawfully perpetrated upon Plaintiff Jean and Oregon Sub-Class members.

102.     Specifically under Section 646.608, Defendants have violated the following

provisions of the OUTPA:

    a.  (1)(e): Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have;

    b.  (1)(g): Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another;

    c.  (1)(i): Advertises real estate, goods or services with intent not to provide the real estate, goods or services as advertised; and

    d.  (1)(u): Engages in any other unfair or deceptive conduct in trade or commerce. OR. REV. STAT. § 646.608(1).

103.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Jean and members of the Oregon Sub-Class, about the quality and true value of the misrepresented Sunscreen Products.

104.   Defendants intentionally and knowingly misrepresented, concealed, or omitted material facts regarding the Products' benefits and composition.

105.   Defendants owed Plaintiff Jean and the Oregon Sub-Class a duty to disclose the true nature of the Products' and the Products' ingredients because they possessed exclusive knowledge of it; intentionally concealed the fact that the Products contained high levels of benzene; and/or made incomplete, false or misleading representations about the Products while purposefully withholding material facts from Plaintiff Jean and the Oregon Sub-Class that

contradicted these representations.

106.    Defendants' deceptive and unfair actions alleged herein were reckless and undertaken by Defendants knowingly.

107.    As a result of Defendants' actions, Plaintiff Jean and Oregon Sub-Class members have incurred economic damages, including the cost of purchasing the Products.

108.    Had Plaintiff Jean known about the Products containing high levels of beneze, Plaintiff Jean would not have paid as much for Defendants' Banana Boat Sunscreen Products, or would not have purchased them at all.

109.    Plaintiff Jean further seeks recovery of attorneys' fees, costs of litigation, punitive damages, and other equitable relief as determined by the court pursuant to OR. REV. STAT. § 646.638.

<u>COUNT V</u>

**Fraudulent Concealment**
**(On Behalf of the Nationwide Class, or**
**Alternatively, Pennsylvania, Illinios, and/or Oregon Subclasses)**

110.    Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

111.    Plaintiffs bring this claim against Defendants on behalf of themselves and the other members of the Nationwide Class and, alternatively, the individual State subclasses pled in Paragraph 38 (the "Classes").

112.    Defendants had a duty to disclose material facts to Plaintiffs and the Classes given their relationship as contracting parties and intended users of the Products. Defendants also had a duty to disclose material facts to Plaintiffs and the Classes, namely that it was in fact manufacturing, distributing, and selling harmful products unfit for human use, because Defendants had superior knowledge such that the transactions without the disclosure were rendered inherently

27

unfair.

113.    Defendants possessed knowledge of these material facts. Since at least mid-2020, numerous recalls put Defendants on notice that adulterated and misbranded products were being investigated for contamination with carcinogens, including benzene. Further, benzene is not unavoidable in the manufacture of sunscreens.

114.    During this time, Plaintiffs and members of the Classes were using the Products without knowing they contained dangerous levels of benzene.

115.    Defendants failed to discharge its duty to disclose these materials facts.

116.    In so failing to disclose these material facts to Plaintiffs and the Classes, Defendants intended to hide from Plaintiffs and the Classes that they were purchasing and consuming the Products with harmful defects that was unfit for human use, and thus acted with scienter and/or an intent to defraud.

117.    Plaintiffs and the Classes reasonably relied on Defendants' failure to disclose insofar as they would not have purchased the defective Products manufactured sold by Defendants had they known they contained unsafe levels of benzene.

118.    As a direct and proximate cause of Defendants' fraudulent concealment, Plaintiffs and the Classes suffered damages in the amount of monies paid for the defective Products.

119.    As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

## COUNT VI

### Unjust Enrichment
### (On Behalf of the Nationwide Class)

120.    Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though set forth fully herein.

121.     Plaintiffs and the other members of the Nationwide Class conferred benefits on Defendants in the form of monies paid to purchase Defendants' defective and worthless Products.

122.     Defendants voluntarily accepted and retained this benefit.

123.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for products unfit for human use, it would be unjust and inequitable for Defendants to retain the benefit without paying the value thereof.

124.     Defendants received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiffs and the other members of the Nationwide Class because Plaintiffs and members of the Nationwide Class purchased mislabeled products that is not what they bargained for and were not safe and effective, as claimed.

125.     Defendants have been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiffs and the other members of the Nationwide Class. Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs and members of the Nationwide Class, because they would have not purchased the Products had they known the true facts.

126.     Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Nationwide Classis unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A.      For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Classes and Plaintiffs' attorneys as Class Counsel;

B.      For an order declaring the Defendants' conduct violates the causes of action referenced herein;

C.      For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

D.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all claims in this Complaint and of any and all issues in this actions so triable as of right.

Dated: July 1, 2021                              Respectfully Submitted,

By: */s/ Brandon M. Wise*
Brandon M. Wise – MO # 67242
**PEIFFER WOLF CARR**
**KANE & CONWAY, LLP**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
bwise@peifferwolf.com

Jonathan Shub*
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Highway E., 2nd Floor
Haddonfield, NJ 08033
Tel: (856) 772-7200
Fax: (856) 210-9088

30

jshub@shublawyers.com
klaukaitis@shublawyers.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Ste. 2100
Chicago, Illinois 60606
Phone: 202.640.1160
Fax: 202.429.2294
gklinger@masonllp.com

Gary E. Mason*
David K. Lietz*
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Ave. NW Ste. 305
Washington DC 20016
Phone: 202.640.1160
Fax: 202.429.2294
gmason@masonllp.com
dlietz@masonllp.com

*_Pro Hac Vice_ application forthcoming

_Attorneys for Plaintiffs and the Classes_